UNITED STATES DISTRICT COURT
EASTERN DISTCT OF MICHIGAN
SOUTHERN DIVISION

KAYLEE A. CASTLE,

        Plaintiff,        Civil Action No.: 15-11021
                              Honorable Nancy G. Edmunds
       v.              Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [R. 14, 16]**

Plaintiff Kaylee Castle appeals a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for disabled child's insurance benefits ("CIB") and child supplemental security income benefits ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions, referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Court finds that the decision by the administrative law judge ("ALJ") is supported by substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion **[R. 16]** be **GRANTED**;
- Castle's motion **[R. 14]** be **DENIED**; and,

- the Commissioner's decision be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

I.  **BACKGROUND**

   A.  **Castle's Background and Claimed Disabilities**

Born in July 1994, Castle was eighteen when she applied for disability benefits in 2012. She dropped out of high school in the 10th grade, and has been working toward completing her credits for graduation online. Castle has alleged an onset date is December 14, 2010, and that she was disabled by anxiety, bipolar disorder, attention deficit hyperactivity disorder (ADHD), mood disorder, depression and anger issues. [R. 11-6, Tr. 118, 163].

   B.  **Procedural Background**

Castle's claim was denied initially on October 2, 2102, and she filed a timely request for an administrative hearing. [R. 11-4, Tr. 56-59, 63-65]. The ALJ held a hearing on September 10, 2013, during with Castle and a vocational expert (VE) testified. [R. 11-2, Tr. 28-44]. In a November 15, 2013 written decision, the ALJ found Castle to be not disabled. [*Id.*, Tr. 14-37]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [*Id.*, Tr. 1-3]. Castle timely filed for judicial review. [R. 1].

**C.    The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner determines whether a child is disabled by analyzing three sequential steps, assessing: (1) whether the child is engaged in "substantial gainful activity"; (2) whether the child has a "severe" impairment;[1] and (3) whether the child's impairment meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *See* 20 C.F.R. §416.924(a).

Applying this framework, the ALJ concluded that Castle was not disabled. She first found that Castle had not engaged in substantial gainful activity since her application date. [R. 11-2, Tr. 13]. The ALJ determined that Castle had the severe impairments of ADHD, affective disorder, anxiety disorder and learning disorder. [*Id.*]. Next, the ALJ concluded that none of Castle's impairments, either alone or in combination, met or medically equaled the severity of the listed impairments. [*Id.*, Tr. 14-15].

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 1520(c); 920(c).

The ALJ then found that Castle had the residual functional capacity (RFC)

> to perform a full range of work at all exertional levels but with the following non-exertional limitations: She can perform simple, routine, and repetitive tasks with minimal changes in routine work setting and no production rate pace work; and she can occasionally interact with supervisors, but she should have no more than minimal, superficial interaction with co-workers or the general public.

[*Id.*, Tr. 15].

After considering Castle's age, education, work experience, RFC and the testimony of the VE, the ALJ determined that she was not disabled. [*Id.*, Tr. 20].

## II. ANALYSIS

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining

4

whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Castle argues that the ALJ erred by failing to give controlling weight to an opinion from her treating psychiatrist, that the ALJ's conclusions are inconsistent with evidence in the record, and that the RFC should have indicated that her workday and workweek would necessarily be interrupted by symptoms from her mental illnesses. The Court disagrees and recommends that the ALJ's decision be affirmed.

### A.   Treating Physician Rule

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. If an ALJ gives less than controlling weight to a treating source's opinion, she must provide "good reasons" for doing so that are "supported by the evidence in the case record, and … sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th

Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2); SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996)).

Here, treating psychiatrist C.A.N. Rao, M.D., cosigned an opinion on July 9, 2013 indicating that, among other limitations, Castle's ADHD, bipolar disorder and oppositional defiant disorder rendered her markedly limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.[2] [R. 11-9, Tr. 518-20]. The ALJ gave this opinion little weight, finding it to be "inconsistent with the evidence of record as a whole, including Dr. Rao's own treatment reports." [R. 11-2, Tr. 18]. Castle accuses the ALJ of using a "shotgun" approach of reporting only reports in which she was doing better. The Court disagrees.

The ALJ accurately described Dr. Rao's treatment reports as "most recently indicat[ing] no abnormal findings on mental status examination and not[ing] her report that her mood was better, everything was going 'all right', and denying any symptoms of depression as she was still working toward her high school diploma." [*Id.*]. Dr. Rao began treating Castle in December 2012, at a time in which she had been off of the previously prescribed Abilify, Prozac and Strattera for six months. [R. 11-9, Tr. 442-43]. He

---

[2] The Court is not discussing the other limitations imposed by Dr. Rao because this is the only one at issue. [R. 14, PgID 578].

6

reported Castle's mental status exam (MSE) as revealing problems with moodiness, irritability and poor concentration, a labile affect, feelings of anxiousness and being uptight. [*Id.*, Tr. 443]. Dr. Rao diagnosed Castle with ADHD with anxiety, and restarted her on her previous medications. [*Id.*]. During the five subsequent medication reviews, Dr. Rao described Castle as doing better, being friendly, talkative and "free of acute psychiatric symptoms," denying depression, and being goal oriented as she worked toward achieving her high school diploma online. [*Id.*, Tr. 444-45, 507-11, 514-15]. Although Castle had previously discussed trouble with controlling her mood, she reported in April and May, 2013 that she was gaining insight, not having acute mood swings and was getting along with her grandmother, with whom she lived since March. [*Id.,* Tr. 444-45, 511].

Castle's good mood while living with her grandmother and talkativeness during therapy are noteworthy because, in August 2012, Castle and her mother described her as having a difficult time adjusting to change, needing company for showering and shaving, and rarely talking during therapy. [R. 11-6, Tr. 125-40]. The ALJ accurately points out that these August 2012 reports were written during a time period in which Castle was receiving no mental health treatment, and that the medical records show her improving significantly once she resumed treatment in

December 2012.  [R. 11-2, Tr. 18-19].

The Court further notes that Dr. Rao never diagnosed Castle with bipolar disorder or oppositional defiant disorder, [*see* R. 11-9, Tr. 442-45, 511, 514-15], so it is unclear why he imposed restrictions based in part on those diagnoses.

### B.  Substantial Evidence in the Record for the ALJ's Decision

Castle argues that Dr. Rao's opinion was consistent with evidence is the record that she cites, and that the ALJ's decision was inconsistent with that evidence.  [R. 14, PgID 584-589].  Nonetheless, the ALJ's conclusions, including that Dr. Rao's opinion was deserving of little weight, is supported by other substantial evidence.

Specifically, reports from Castle's therapist (a social worker) and then treating psychiatrist for the period of February through September 2011 generally described her as doing better and often having a bright mood, with no reports of depression or suicidal ideation despite the trauma associated with her father's recent diagnosis of paranoid schizophrenia. [See R. 11-9, Tr. 371 (doing well except for anxiety in group situations); *Id.,* Tr. 370 (doing well except for mood fluctuations); R. 11-7, Tr. 225 (doing well behaviorally, but mood fluctuated and was having poor sleep); R. 11-9, Tr. 369 (doing well taking medications, no major concerns, mood better,

8

affect appropriate, speech better, fair judgment, mood euthymic, not suicidal, no hallucinations, insight fair); R. 11-7, Tr. 219 (mood fairly bright); *Id.*, Tr. 238-47 (no current suicidal ideation); *Id.,* Tr. 268 (doing better with mood and behaviors, and Castle thought that less therapy was appropriate); *Id.,* Tr. 266 (reported doing well); *Id.,* Tr. 262 (dealing with father's schizophrenia, but functioning better, mood bright); R. 11-9, Tr. 368 (affect appropriate, speech spontaneous, no delusions, fair judgment, mood euthymic, not suicidal, no hallucinations, memory intact, insight fair); R. 11-7, Tr. 260 (mood bright, doing well); *Id.,* Tr. 258 (feeling well, doing well with completing school credits and helping around house, not anxious or depressed); *Id.,* Tr. 256 (still doing well with school and otherwise)].

However, Castle stopped taking her medication as directed and her then psychiatrist noted in October 2011 and February 2012 that she was not doing well as a result. [R. 11-9, Tr. 366-67]. After Castle resumed her medications, her mother reported in April 2012 that she was doing well. [R. 11-9, Tr. 365]. By June, her therapist described Castle as having a bright mood, regular sleep and no major issues. [R. 11-8, Tr. 356, 358]. That must have been around the time that Castle stopped taking her medications, as she reported in December 2012 that she had not been taking any for six months. [R. 11-9, Tr. 442-43]. It was during the period of

being unmedicated that Castle tried working at Meijers, but quit due to high anxiety while interacting with customers and coworkers. [*Id.,* Tr. 375]. As previously described, Castle's condition improved when she began treating with Dr. Rao and resumed her medication regimen. Castle then was noted to have gone bowling, and to be often shopping and socializing with friends in public. [*Id.*, Tr. 507-11, 515].

Moreover, the ALJ did not disregard the evidence that Castle cites; she significantly accounted for Castle's non-exertional limitations by requiring her RFC only simple and routine work, minimal changes in routine work setting, no more than minimal interaction with the public or co-workers, and only occasional interaction with supervisors. [R. 11-2, Tr. 15].

For these reasons, even though Castle cites evidence that might support a contrary conclusion, there is substantial evidence in the record to support the ALJ's decisions and it should be affirmed. "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

    **C.**    **Workday and Workweek Interruptions**

Castle complains that the ALJ did not include the requirement that she have interrupted workdays and workweeks in her RFC. She alleges that, even though the ALJ claimed to give significant weight to the opinion of State agency psychologist Barbara Jean Smith, Ph.D., [R. 11-2, Tr. 18], she failed to adopt Dr. Smith's conclusion that she was moderately limited in her ability to complete a normal workday and workweek without interruptions, and to perform at a consistent pace without an unreasonable number and length of rest periods. [R. 14, PgID 586; R. 11-3, Tr. 50-51]. However, the ALJ did not give Dr. Smith's opinion controlling weight, and the regulations would not support such deference. See 20 C.F.R. § 404.1527(e). The final responsibility for assessing Castle's RFC was reserved for the Commissioner. § 404.1527(d)(2); *Edwards v. Comm'r of Soc. Sec.*, 97 F. App'x 567, 569 (6th Cir.2004) ("[The RFC] determination is expressly reserved for the Commissioner."). Further, as Castle admits, Dr. Smith's September 2012 opinion did not benefit from Dr. Rao's later records, which showed Castle improving once she resumed taking her medications.

Consequently, the Court finds that the ALJ did not err by issuing a RFC that did not anticipate necessary interruptions in her workday or workweek.

11

### III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Castle's Motion for Summary Judgment **[R. 14]** be **DENIED**, the Commissioner's Motion **[R. 16]** be **GRANTED** and this case be **AFFIRMED**.

                              s/Elizabeth A. Stafford
                              ELIZABETH A. STAFFORD
                              United States Magistrate Judge

Dated: January 19, 2016

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 19, 2016.

        s/ Karri Sandusky for
        MARLENA WILLIAMS
        Case Manager